IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:15-CV-00229-D

**Pearline Shaw Jackson,**

              Plaintiff,

v.

**Nancy Berryhill**, Acting Commissioner of Social Security,[1]

              Defendant.

**Memorandum & Recommendation**

      Plaintiff Pearline Shaw Jackson instituted this action on October 22, 2015, to challenge the denial of her application for social security income. Jackson claims that the Administrative Law Judge ("ALJ") Marcus Christ erred in evaluating the medical opinion evidence and in determining Jackson's residual functional capacity ("RFC"). Both Jackson and Defendant Nancy Berryhill, the Acting Commissioner of Social Security, have filed motions seeking a judgment on the pleadings in their favor. D.E. 20, 23.

      After reviewing the parties' arguments, the court has determined that ALJ Christ reached the appropriate decision. There is substantial evidence to support the the weight he afforded to the medical opinion evidence and his determination that Jackson has the RFC to perform a reduced range of sedentary work. Therefore, the undersigned magistrate judge recommends that

---

[1] Berryhill replaced Carolyn Colvin as the Acting Commissioner of Social Security on January 20, 2017.

the court deny Jackson's motion, grant Berryhill's motion, and affirm the Commissioner's decision.[2]

I. **Background**

On May 31, 2012, Jackson filed an application for disability insurance benefits alleging a disability that began on February 29, 2012. After her claim was denied at the initial level and upon reconsideration, Jackson appeared for a hearing via video-conference before ALJ Christ on June 18, 2014, to determine whether she was entitled to benefits. ALJ Christ determined determined Jackson was not entitled to benefits because she was not disabled. Tr. at 133–40.

ALJ Christ found that Jackson had the following severe impairments: diabetes mellitus, leg pain/edema, and fibromyalgia. *Id.* at 135. ALJ Christ found that these impairments, alone or in combination, did not meet or equal a Listing impairment. *Id.* ALJ Christ then determined that Jackson had the RFC to perform sedentary work with the following limitations: she can only occasionally climb ramps and stairs and she can never climb ladders, ropes, or scaffolds; she can perform frequent stooping; and she must avoid concentrated exposure to unprotected heights. *Id.* at 136. ALJ Christ concluded that Jackson was unable to perform any past relevant work but that, considering her age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she was capable of performing. *Id.* at 139. These include: appointment clerk, interviewer, and record clerk/file clerk. *Id.* Thus, ALJ Christ found that Jackson was not disabled. *Id.*

After unsuccessfully seeking review by the Appeals Council, Jackson commenced this action by filing a complaint pursuant to 42 U.S.C. § 405(g) on October 22, 2015. D.E. 5.

---

[2] The court has referred this matter to the undersigned for entry of a Memorandum and Recommendation. 28 U.S.C. § 636(b).

## II. Analysis

### A. Standard for Review of the Acting Commissioner's Final Decision

When a social security claimant appeals a final decision of the Commissioner, the district court's review is limited to the determination of whether, based on the entire administrative record, there is substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). If the Commissioner's decision is supported by such evidence, it must be affirmed. *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

### B. Standard for Evaluating Disability

In making a disability determination, the ALJ engages in a five-step evaluation process. 20 C.F.R. § 404.1520; *see Johnson v. Barnhart*, 434 F.3d 650 (4th Cir. 2005). The analysis requires the ALJ to consider the following enumerated factors sequentially. At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. At step two, the claim is denied if the claimant does not have a severe impairment or combination of impairments significantly limiting him or her from performing basic work activities. At step three, the claimant's impairment is compared to those in the Listing of Impairments. *See* 20 C.F.R. Part 404, Subpart P, App. 1. If the impairment is listed in the Listing of Impairments or if it is equivalent to a listed impairment, disability is conclusively presumed. However, if the claimant's impairment does not meet or equal a listed impairment, the ALJ assesses the claimant's RFC to determine, at step four, whether he can perform his past work despite his impairments. If the claimant cannot perform past relevant work, the analysis moves on to step five: establishing

3

Case 7:15-cv-00229-D   Document 26   Filed 01/23/17   Page 3 of 18

whether the claimant, based on his age, work experience, and RFC can perform other substantial gainful work. The burden of proof is on the claimant for the first four steps of this inquiry, but shifts to the Commissioner at the fifth step. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

### C. Medical Background

The medical evidence during the relevant period reveals the following: Jackson has a history of diabetes, foot pain, and back pain. Dr. Henry W. Traylor treated Jackson for several years. His diagnoses include diabetic peripheral neuropathy and degenerative disc disease of the cervical spine. His treatment notes observed that Jackson has experienced edema in her extremities and that her diabetes was poorly controlled. Tr. at 584. In September 2011, Dr. Traylor noted that Jackson had poor dietary discretion and advised her about a proper diet. *Id*. at 751.

A cervical spine x-ray from January 2012 showed mild to moderate degenerative changes with preserved disc space. *Id*. at 579. Examinations in April 2012 and in June 2012 disclosed no edema in her extremities. *Id*. at 573, 661. However, in August and again in October of that year, Dr. Traylor noted Jackson had trace pitting edema in her extremities. *Id*. at 651, 655. In December 2012, Dr. Traylor again noted Jackson's poor diet and found that her diabetes was poorly controlled secondary to poor compliance. *Id*. at 740.

In March 2013 and again in June 2013, Dr. Traylor found no edema in Jackson's extremities. *Id*. at 736, 738. Treatment records from September 2013 note moderate changes in Jackson's lumbrosacral spine. *Id*. at 739. Imaging studies from October 2013 indicate mild to moderate changes in Jackson's hips and pelvis. *Id*. at 696. In November 2013, Dr. Traylor observed that Jackson had a normal exam, with no edema or pain, and he recommended exercise. *Id*. at 1069–70.

One month later, Dr. Traylor prepared a Medical Source Statement. *Id*. at 790–99. He opined that Jackson could occasionally lift and carry up to 10 pounds; could sit one hour at a time and a total of three hours in an eight hour work day; could stand 15 minutes at a time and up to a total of one hour in an eight hour work day; and could walk 10 minutes at a time and a total of 45 minutes in an eight hour work day. *Id*. at 791–92. He found that she did not require an assistive device to ambulate. *Id*. at 792. Dr. Traylor determined that Jackson could engage in occasional reaching, handling, and fingering, but that she could never push or pull and could never operate foot controls. *Id*. at 793. He concluded that Jackson could never climb stairs, ramps, ladders, or scaffolds; could never balance, stoop, kneel, crouch, or crawl; and could not tolerate unprotected heights, moving mechanical parts, extreme temperatures, or pulmonary irritants. *Id*. at 794–95. Dr. Traylor found that because of Jackson's pain and weakness, she could not shop or travel without assistance; use public transportation; walk one block or climb a few steps at a reasonable pace; or sort, handle, or use files. *Id*. at 795. Dr. Traylor concluded that none of Jackson's impairments affected her hearing or vision. *Id*. at 794. Due to her mental impairments, Dr. Traylor also opined that Jackson was unable to understand, remember, or carry out instructions, she could not interact appropriately with others, and she could not respond to changes in a workplace setting. *Id*. at 797–98.

In January 2014, Jackson reported that she felt well and had only minor complaints. *Id*. at 1061. Examination findings were generally normal, with no edema, but showed diffuse muscle pain and tender SI joints. *Id*. The following month, Jackson complained of swollen hands, dropping things, foot pain, memory loss, and trouble focusing. *Id*. at 1049. Dr. Traylor's exam had normal findings except for diffuse muscle pain and tender SI joints. *Id*. at 1051.

Examinations in March 2014 and in May 2014 were normal, with Jackson demonstrating normal gait, no edema, and no pain. *Id*. at 1030, 1041.

Dr. Traylor completed a second Medical Source Statement on June 14, 2014. *Id.* at 1103–05. It cites her leg pain, fatigue, lack of coordination, and frequent falls as her primary symptoms and notes that she experiences constant pain and weakness in her lower legs and feet. *Id*. at 1103. Dr. Traylor opined that she could sit, stand, and walk up to two hours in an eight hour day; she could rarely carry or lift up to 10 pounds; she has significant limitations in reaching, handling, fingering, and lifting; her condition would interfere with her ability to keep her neck in a constant position; and she did not require an assistive device to stand or walk. *Id*. at 1104. He also assessed limitations in stooping, pushing, kneeling, pulling, and bending, and found that she needed to avoid extreme temperatures and heights. *Id*. Dr. Traylor also remarked that Jackson suffers from significant anxiety and depression, and that no medications alleviate her symptoms. *Id*. at 1105. He opined that she would be absent from work three or more times per month. *Id*.

Dr. Dhavel Patel examined Jackson in July 2011 and found she had full range of motion in the joints with no tenderness, full strength with no obvious weaknesses, intact sensation, and symmetrical deep tendon reflexes. *Id*. at 376. Dr. Shawn Fleming performed a consultative examination in August 2011. *Id*. at 416–17. Although Jackson complained of leg pain, she stated she was able to walk or run up to three miles. *Id*. Imaging studies showed diffuse atherosclerosis without stenosis. *Id*. at 416. Aside from a diminished ankle-brachial index, Dr. Fleming found Jackson suffered no other ill effects from peripheral vascular disease. *Id*. at 417. He recommended compression stockings and directed her to follow-up for a venous insufficiency study. *Id*.

Physicians Assistant Lori Fischi saw Jackson in October 2011 for her complaints of leg swelling. *Id*. at 497–500. Jackson reported no muscle aches or weakness, no joint pain, and no back pain. *Id*. at 499. Examination revealed normal muscle strength, normal gait, and intact sensation. *Id*. at 500. An ultrasound showed evidence of deep venous reflux bilaterally but no indication of super venous thrombosis or superficial reflux. *Id*. at 497.

State agency physician Dr. Evelyn Jimenez-Medina reviewed Jackson's records in February 2013. *Id*. at 198–99. Dr. Jimenez-Medina opined that Jackson could perform light work and that she could climb ramps and stairs, balance, stoop, kneel, crouch, and crawl without limitation but she could only frequently climb ladders, ropes, or scaffolds. *Id*. Dr. Jimenez-Medina assessed no environmental, manipulative, communicative, or visual limitations. *Id*. at 199.

Drs. Hemang Shah and Stephen S. McNatt both recommended that Jackson exercise. *Id*. at 711–713.

### D. Medical Opinion Evidence

Jackson argues that ALJ Christ erred in weighing the medical opinion evidence from Dr. Traylor. The Commissioner posits that the opinion evidence was properly considered. The court finds that Jackson has not established that ALJ Christ erred in his evaluation of Dr. Traylor's assessment.

Regardless of the source, the ALJ must evaluate every medical opinion received. 20 C.F.R. § 404.1527(c). While an ALJ is under no obligation to accept any medical opinion, *see Wireman v. Barnhart*, No. 2:05-CV-46, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006), he must nevertheless explain the weight accorded such opinions. *See* SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996); SSR 96-6p, 1996 WL 374180, at *1 (July 2, 1996). When evaluating

7

medical opinions, the ALJ should consider "(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson*, 434 F.3d at 654. An ALJ's determination as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up "specious inconsistencies," *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992), or has failed to give a sufficient reason for the weight afforded a particular opinion, *see* 20 C.F.R. § 404.1527(c). Generally, the more relevant evidence the medical source presents to support his opinion, and the better that he explains it, the more weight his opinion is given. *See id*. § 404.1527(c)(3). Additionally, the more consistent the opinion is with the record as a whole, the more weight the ALJ will give to it. *See id*. § 404.1527(c)(4).

According to 20 C.F.R. § 404.1527(c)(2), a treating source's opinion on issues of the nature and severity of the impairments will be given controlling weight when the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and when the opinion is consistent with the other substantial evidence in the record. Conversely, however, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001); *see also Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996) (finding that "if a physician's opinion in not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight"). A medical expert's opinion as to whether a claimant is disabled is not dispositive; opinions as to disability are reserved for the ALJ and for the ALJ alone. *See* 20 C.F.R. § 404.1527(d)(1).

Jackson argues ALJ Christ failed to evaluate Dr. Traylor's opinions utilizing the § 1527 factors. She notes that Dr. Traylor he has treated her for over 20 years. She also asserts that ALJ Christ erred because he cited only Dr. Traylor's June 2014 assessment, and did not discuss Dr. Traylor's December 2013 opinion as well.

As noted above, Dr. Traylor offered a Medical Source Statement in December 2013. Tr. at 791–99. In it, he opined that Jackson could occasionally lift and carry up to 10 pounds; could sit one hour at a time and a total of three hours in an eight hour work day; could stand 15 minutes at a time and up to a total of one hour in an eight hour workday; could walk 10 minutes at a time and a total of 45 minutes in an eight hour work day; but that she did not require an assistive device to ambulate. *Id.* at 791–92. He also found that Jackson could engage in occasional reaching, handling, and fingering, but that she could never push or pull and could never operate foot controls. *Id.* at 793. His restrictions also included no climbing stairs, ramps, ladders, or scaffolds; no balancing, stooping, kneeling, crouching, or crawling; and no work around unprotected heights, moving mechanical parts, extreme temperatures, or pulmonary irritants. *Id.* at 794–95. Dr. Traylor also concluded that none of Jackson's impairments affected her hearing or vision. *Id.* at 794.

Dr. Traylor's June 14, 2014 Medical Source Statement opines that Jackson's diabetic peripheral neuropathy has a poor prognosis. Tr. at 1103–05. It notes that she experiences constant pain and weakness in her lower legs and feet. *Id.* at 1103. Dr. Traylor opined that she could sit, stand, and walk up to two hours in an eight hour day; she could rarely carry or lift up to 10 pounds; she has significant limitations in reaching, handling, fingering, and lifting; her condition would interfere with her ability to keep her neck in a constant position; and she did not require an assistive device to stand or walk. *Id.* at 1104. He also assessed limitations in stooping,

9

pushing, kneeling, pulling, and bending, and found that she needed to avoid extreme temperatures and heights. *Id*. Dr. Traylor also remarked that Jackson suffers from significant anxiety and depression, that she would be absent from work three or more times per month, and that no medications alleviate her symptoms. *Id*. at 1105.

ALJ Christ remarked that he had evaluated the medical opinions pursuant to 20 C.F.R. § 404.1527. *Id*. at 137. Additionally, ALJ Christ's decision discussed the medical evidence from Dr. Traylor, including his June 2014 Medical Source Statement. *Id*. at 137–38. In giving it little weight, ALJ Christ noted Dr. Traylor concluded that Jackson would be incapable of performing even sedentary, low stress work due to her peripheral neuropathy. *Id*. at 137. ALJ Christ found this statement inconsistent with the other medical evidence of record, including clinical examinations showing only minimal or mild findings and Jackson's statements to providers that she was feeling well, had only minor complaints, and felt her medication was effective. *Id*. at 138.

ALJ Christ also observed that, by her own testimony, Jackson was non-compliant with treatment and has failed to adhere to consistent instructions regarding diet and exercise to manage her diabetes. *Id*. This permitted him to draw an inference that her symptoms were not as disabling as she alleged. *Id*. *See* SSR 96-7p, 1996 WL 374186, at *7 (July 2, 1996) (A claimant's statements "may be less credible . . . if the medical reports or records show that the [claimant] is not following the treatment as prescribed and there are no good reasons.").[3] Finally, Dr. Traylor based many of his findings on Jackson's reports of constant pain, but ALJ Christ noted that Jackson denied she had constant pain. *Id*. at 136. Moreover, Jackson's testimony that she had

---

[3] Subsequent to the ALJ's decision, the Social Security Administration superseded SSR 96-7p with SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). Although there were no policy changes relevant herein, because SSR 96-7p was in effect at the time the ALJ's decision, the undersigned will review the decision under SSR 96-7p. *See Keefer v. Colvin*, C/A No. 1:15-4738-SVH2016, WL 5539516, at *11 n.5 (D.S.C. Sept. 30, 2016).

problems seeing and that she had lost her peripheral vision is contrary to Dr. Traylor's finding that she had no visual limitations. *Id*. at 164–65, 794.

Therefore, under § 1527, Dr. Traylor's opinions were not entitled to controlling weight because, despite the fact that he was a treating physician who had provided care to Jackson or a long period of time, his findings were inconsistent with the other evidence of record. Accordingly, ALJ Christ did not err in assigning little weight to them.

Although he did not specifically discuss or weigh Dr. Traylor's December 2013 Medical Source Statement, any error in failing to do so is harmless. First, Dr. Traylor's June 2014 assessment was the more-current evaluation that reflects Jackson's limitations at the time of the hearing only days later. Additionally, as the Commissioner points out, both Medical Source Statements contain many of the same findings. For example, in both assessments, Dr. Traylor found that Jackson had environmental and postural limitations, that she was significantly limited in her abilities to sit, stand, and walk, but that she did not require an assistive device. Like the June 2014 opinion, Dr. Traylor's December 2013 statement and the significant restrictions contained therein are inconsistent with evidence demonstrating only minimal or mild exam findings and Jackson's statements that she was feeling well, had only minor complaints, and felt her medication was effective. For the same reasons, the restrictions assessed by Dr. Traylor in December 2013 are not supported by the record.

Thus, there is a reasonable likelihood that ALJ Christ's decision would be the same even if he had specifically discussed and weighed Dr. Traylor's December 2013 Medical Source Statement. *See Hurtado v. Astrue*, No. 1:09–1073–MBS–SVH, 2010 WL 3258272, at *11 (D.S.C. July 26, 2010) (error in an opinion is harmless because it would not change the outcome of the ALJ's decision).

Given the two Medical Source Statements issued by Dr. Traylor, ALJ Christ's statement that "none of claimant's treating physicians has offered any medical opinion with regard to her functional abilities" is incorrect. Tr. at 137. However, this misstatement constitutes harmless error because ALJ Christ considered, discussed, and weighed Dr. Traylor's opinions. Moreover, as discussed above, ALJ Christ's decision to afford little weight to Dr. Traylor's opinions is supported by substantial evidence. *See, e.g., Chavis v. Colvin*, No. 1:11CV771, 2013 WL 7853486, at *4 (M.D.N.C. Mar. 4, 2013) (misstatement harmless error if the ALJ gave adequate explanation of her findings elsewhere in her decision); *see also Wright v. Comm'r of Soc. Sec.*, 386 F. App'x 105, 109 (3d Cir. 2010) (ALJ's misstatements in written decision harmless error when regardless of them "ALJ gave an adequate explanation supported by substantial evidence in the record").

ALJ Christ properly evaluated Dr. Traylor's opinions and substantial evidence supports his decision. Any error in failing to discuss Dr. Traylor's earlier assessment or in misstating that there were no medical opinions assessing functional limitations would be harmless as it is not reasonably likely to change the outcome of the decision. For these reasons, the court should reject Jackson's argument on this issue.

**E.   RFC**

Jackson next contends that ALJ Christ erred in his RFC determination by finding that she is capable of performing a reduced range of sedentary work and in failing to perform a function-by-function analysis. The Commissioner maintains, and the court agrees, that there is substantial evidence to support ALJ Christ's determination.

If the claimant's impairment does not meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, App. 1, then the ALJ must calculate the claimant's RFC to determine

12

whether he can perform his past work despite his impairments. The claimant's RFC is comprised of his impairments and any related symptoms that affect his abilities in a work setting. 20 C.F.R. § 404.1545(a)(1). When assessing the RFC, the ALJ considers physical abilities; mental abilities; other abilities affected by impairments, such as "impairment(s) which impose environmental restrictions;" and the total limiting effects of the impairments and any related symptoms. *Id.* § 404.1545(b)–(d). The ALJ considers all impairments, even those that are not severe, "and reviews 'all of the relevant medical and other evidence.'" *Bryant v. Colvin*, 571 F. App'x 186, 190 (4th Cir. 2014) (quoting 20 C.F.R. § 404.1545(a)).

The ALJ must provide "findings and determinations sufficiently articulated to permit meaningful judicial review." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983); *see also Wyatt v. Bowen*, 887 F.2d 1082 (table), 1989 WL 117940, at *4 (4th Cir. 1989) (per curiam). The ALJ's RFC determination "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g. daily activities, observations)." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting Social Security Ruling ("SSR") 96-8p). Furthermore, "[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013). Fourth Circuit precedent "makes it clear that it is not [the court's] role to speculate as to how the ALJ applied the law to [her] findings or to hypothesize the ALJ's justifications that would perhaps find support in the record. *Fox v. Colvin*, 632 F. App'x 750, 755 (4th Cir. 2015).

Social Security Ruling 96-8p which explains how adjudicators should assess residual functional capacity. The Ruling instructs that the residual functional capacity "assessment must

first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions" listed in the regulations. "Only after that may [residual functional capacity] be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p. The Ruling further explains that the residual functional capacity "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id*. However, there is no "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis[.]" *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015). However, "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)).[4]

In addressing the function-by-function assessment, or lack thereof, the Fourth Circuit's recent decision in *Monroe v. Colvin,* 826 F.3d 176 (4th Cir. 2016), is instructive. The Court of Appeals emphasized that an ALJ should analyze the claimant's limitations function by function in determining the RFC to reduce "the danger that 'the adjudicator [will] overlook limitations or restrictions that would narrow the ranges and types of work an individual may be able to do.'" *Id*. at 187–88 (quoting *Mascio*, 780 F.3d at at 636) (citation omitted). Remand may be appropriate "where an ALJ fails to assess a claimant's capacity to perform relevant functions,

---

[4] In *Mascio*, the Fourth Circuit also criticized the ALJ's use of boilerplate language that stated: "claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC]." 780 F.3d at 639 (internal quotation marks omitted). The Court of Appeals noted that such language got "things backwards by implying that ability to work is determined first and is then used to determine the claimant's credibility." *Id*. However, this failing would be harmless error where the ALJ properly evaluates credibility elsewhere in the decision. *Id*. at 644–45.

14

despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review[.]" *Id.* (quoting *Mascio*, 780 F.3d at 636).

Jackson contends that ALJ Christ use of boilerplate language fails to address the required function-by-function analysis of her abilities. Here, ALJ Christ did not conduct a function by function analysis of Jackson's abilities. This alone is not sufficient to require remand. *Mascio*, 780 F.3d 636. In the absence of an explicit function-by-function analysis, the reviewing court "must assess whether the ALJ's RFC analysis considered the relevant functions, whether his decision provides a sufficient basis to review his conclusions, and, ultimately, whether substantial evidence in the record supports that decision." *Ashby v. Colvin*, No. 2:14-674, 2015 WL 1481625, *3 (S.D.W. Va. Mar. 31, 2015) (holding that ALJ did not conduct explicit function-by-function analysis of claimant's physical abilities, but sufficient evidence existed showing that ALJ analyzed the relevant function).

In this case, ALJ Christ considered the relevant functions and provided sufficient detail about how evidence from the record supported his conclusions regarding Jackson's RFC. Tr. at 135–38. ALJ Christ listed Jackson's RFC as sedentary and then identified additional restrictions. *Id*. at 136. ALJ Christ then reviewed the evidence in the record and explained why it supported the RFC determination. *Id*. at 136–38. He also evaluated Jackson's credibility and explained why he did not finding her fully credible. *Id*. at 137. ALJ Christ also weighed the medical opinion evidence. *Id*. at 137–38. In sum, the portions of the record cited in ALJ Christ's decision constitute substantial evidence supporting the functions outlined in Jackson's RFC. Although he did not discuss each function with specific reference to objective evidence, ALJ Christ did provide a narrative explanation of the evidence. This explanation allows a meaningful review of

the basis for ALJ Christ's conclusions. Therefore, ALJ Christ did not err by failing to perform a function-by-function analysis.

Moreover, Jackson does not identify specific limitations supported by the record that ALJ Christ failed to consider. The restrictions assessed by Dr. Traylor in his Medical Source Statements were given little weight because, as noted above, they were inconsistent with other evidence in the record. There is no contradictory evidence in the record suggesting Jackson is unable to perform other relevant functions not addressed by the RFC. Accordingly, the decision is not inconsistent with the Fourth Circuit holdings in *Mascio* or *Monroe*.

Jackson also contends ALJ Christ erred in failing to cite diagnostic studies documenting her cervical spine condition and her diabetic neuropathy. She points to a cervical spine MRI documenting cervical spine stenosis. *Id*. at 1111. She also points out that an x-ray of her lower legs showed peripheral vascular disease. *Id*. at 1108–09. She argues that ALJ Christ failed to discuss any functional limitations related to these findings. Jackson argues that ALJ Christ's findings are contrary to the holding in *Mascio*. 780 F.3d 632.

ALJ Christ found that Jackson was capable of performing a reduced range of sedentary work. Tr. at 137. ALJ Christ also stated that in making the determination, he carefully considered the entire record. *Id.* at 135. With respect to the imaging studies not cited by ALJ Christ, it is well-settled that an ALJ need not comment on every piece of evidence. *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) ("[A]n ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered."); *Mellon v. Astrue*, No. 4:08–2110–MBS, 2009 WL 2777653, at *13 (D.S.C. Aug 31, 2009) ("[I]t is widely held that ALJs are not required to specifically discuss and analyze every piece of evidence in the case in their narrative opinions so long as it is possible for the reviewing court to

realize that all relevant evidence was considered."). Further, Jackson fails to demonstrate how ALJ Christ's discussion of the imaging evidence would change the outcome of his decision.

Moreover, ALJ Christ's decision specifically notes Jackson's diabetic neuropathy and diffuse joint pain which she attributed to osteoarthritis and osteoporosis. Tr. at 136–38. He found, however, that these conditions did not result in the degree of limitation Jackson alleged given that there was other evidence suggesting she was not as limited as she claimed. Such evidence included generally normal or minimal exam findings, a lack of significant health complaints to providers, her reports that medications were effective in treating her symptoms, and her non-compliance with medical directives.

Accordingly, the undersigned finds that ALJ Christ's RFC analysis was proper, evaluating numerous factors as required by the regulations to explain his findings. His determination is supported by substantial evidence. For these reasons, Jackson's argument on this issue lacks merit.

### III. Conclusion

For the forgoing reasons, the court recommends that the court deny Jackson's Motion for Judgment on the Pleadings (D.E. 20), grant Berryhill's Motion for Judgment on the Pleadings (D.E. 23), and affirm the Commissioner's decision.

Furthermore, the court directs that the Clerk of Court serve a copy of this Memorandum and Recommendation on each of the parties or, if represented, their counsel.  Each party shall have until 14 days after service of the Memorandum and Recommendation on the party to file written objections to the Memorandum and Recommendation.  The presiding district judge must conduct his or her own review (that is, make a *de novo* determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject,

or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Owen v. Collins*, **766 F.2d 841, 846-47 (4th Cir. 1985).**

Dated: January 23, 2017

_____
ROBERT T. NUMBERS, II
UNITED STATES MAGISTRATE JUDGE

18

Case 7:15-cv-00229-D   Document 26   Filed 01/23/17   Page 18 of 18